UNITED STATES of America

v.

Garry JORDAN, Appellant.

No. 86–3005.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 3, 1986.

Decided Jan. 27, 1987.

Sidney R. Bixler (appointed by this Court) for appellant.

Ariadne Symons, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell and Mark J. Biros, Asst. U.S. Attys., were on the brief for appellee.

Before WALD, Chief Judge, WILLIAMS, Circuit Judge, and WILL,* Senior District Judge.

Opinion for the Court filed by Circuit Judge WILLIAMS.

* Of the United States District Court for the Northern District of Illinois, sitting by designation

WILLIAMS, Circuit Judge:

Garry Jordan was convicted of one count of aiding and abetting the distribution of phencyclidine ("PCP") and one count of distribution of PCP. *See* 21 U.S.C. § 841(a) (1982); 18 U.S.C. § 2 (1982). Based on a prior Maryland conviction for possession with intent to distribute PCP, the District Court enhanced his sentence under 21 U.S.C. § 841(b)(1)(B) (Supp. III 1985). Jordan appeals both the conviction and the sentence.

I

The aiding-and-abetting conviction relates to a transaction that occurred on March 27, 1985. The police testimony at trial was uncontroverted. On March 26, Metropolitan Police Sergeant Miller instructed Gregory Washington, an informant, to meet "Garry" at Fun Factory Records and arrange to purchase drugs. Washington returned bearing a small bottle, apparently containing a PCP sample, which he attributed to Garry, and informed Miller that he had arranged a $3000 purchase from Garry for the next day.

On March 27, Miller, under cover, and Washington waited for Garry in a taxicab at the prearranged time and street corner. Detective Norris and another officer were also in the vicinity to observe the transaction. Appellant arrived on foot 50 minutes later, entered the rear seat of the taxicab, and asked if the money was ready. He declined to view the money because, he said, "my people aren't here yet"; then he departed. A minute or two later a man in a grey jogging suit passed the taxicab carrying a brown paper bag behind his back. Appellant then returned to the taxicab to notify Miller and Washington that the man in the grey jogging suit would deliver the PCP. He directed Miller to give the money to Washington, who would transfer it to appellant later. The man in the jogging suit—to whom Norris saw ap-

pursuant to 28 U.S.C. § 294(d).

pellant signal after leaving the taxicab for the second time—gave the bag containing a bottle of liquid PCP to Miller and left. After Miller and Washington departed, Norris saw appellant drive away with the figure in the jogging suit.

The distribution conviction arose out of a transaction a week later. On April 4, Washington placed six telephone calls to appellant, which Norris and Miller recorded, to arrange a second PCP purchase. Miller testified that appellant, who was waiting at the designated location when Miller and Washington arrived, handed him a brown paper bag containing a bottle of PCP. He told Miller that this batch was a little stronger than the last one, and that "a couple more times and I'll be putting out some real high-test shit." Norris observed the transaction from afar and corroborated Miller's testimony.

## II

The government's inability to produce Washington at trial—after considerable efforts, see Transcript at 180–81 (visited last known residence six to eight times; left messages with relatives), 184, 196–97 (questioned relatives); see also id. at 202–05—gives rise to appellant's two hearsay and confrontation-clause challenges. First, appellant challenges the District Court's admission, over objection, of the tape recordings of the telephone calls in which he and Washington plotted the April 4 transaction. Specifically, appellant directs our attention to one telephone call in which Washington and appellant arranged a meeting for 6:00 that evening, Memorandum on Admissibility of Tapes, Exhibit ("Exh.") A, at 7–8 (filed Nov. 19, 1985), and another in which Washington asked whether "it [is] stronger than it was last week," and appellant responded, "A little bit you know." Id., Exh. A, at 2.

■ Appellant's own incriminating statements were, of course, party admissions, and therefore not hearsay. See FED.R. EVID. 801(d)(2)(A) (1986). He objects, instead, to the introduction of Washington's side of the conversations. Those state-

ments, however, were not hearsay; they were admitted not for their truth, see id. 801(c), but "to make [appellant's] responses intelligible to the jury and recognizable as admissions," United States v. Lemonakis, 485 F.2d 941, 948 (D.C.Cir.1973), cert. denied, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974). The trial court so instructed the jury, both when the tapes were played and again in the final instructions. Nor was there any danger that the jury would misuse Washington's statements for their truth. It was utterly irrelevant whether Washington actually intended to meet appellant that night when he arranged the meeting, or whether he cared if "it" (whatever "it" may have been) was "stronger than it was last week." There having been no reason to test Washington's credibility, the introduction of his side of the conversations violated neither the hearsay rule nor appellant's sixth amendment right of confrontation. Id. at 949–50.

The second set of hearsay objections, which appellant raises for the first time on appeal, relate only to the aiding-and-abetting conviction. Sgt. Miller testified that Washington, after ostensibly meeting with Garry, returned with a vial of PCP, "which was a sample that [appellant] had obtained of the product that I was to purchase the next day." He later testified that before the transaction he "was aware [from Washington] that [appellant would] ha[ve] one other individual with him." Norris testified that he learned of the details of the planned deal "from Gregory Washington who had negotiated the transaction," and that he knew only from Washington that the money was subsequently transferred to appellant.

■ The government does not dispute that testimony derived solely from Washington was hearsay, see FED.R.EVID. 801(c), whose admission without any special "indicia of reliability" could implicate appellant's constitutional right to confront witnesses against him, see Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). However, the error was harmless. See United States v. Has-

*ting,* 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981–82, 76 L.Ed.2d 96 (1983). Even without any evidence of appellant's advance planning or ultimate receipt of the proceeds—the only facts to which the hearsay related—there was overwhelming, uncontroverted police testimony that appellant aided in and abetted the illegal transaction. Appellant made the initial contact in the taxicab, asked if the money was ready, and referred to the PCP suppliers as "my people." He then informed Miller of the messenger's identity, arranged for delivery of the money to himself, signaled to the messenger to make the delivery, and drove off with him. The admissible evidence clearly established that appellant had "sufficient knowledge and participation to indicate that he knowingly and wilfully participated in the offense in a manner that indicated he intended to make it succeed." *United States v. Raper,* 676 F.2d 841, 849 (D.C.Cir. 1982); *see United States v. LaGuardia,* 774 F.2d 317, 319–20 (8th Cir.1985). Further, appellant's counsel was able to attenuate the hearsay's impact by suggesting Washington's potential bias as a paid informant whose criminal charges Miller had dismissed. Accordingly, it is clear beyond a reasonable doubt that even without the inadmissible statements the jury would have returned a verdict of guilty. *See United States v. Hasting,* 461 U.S. at 510–11, 103 S.Ct. at 1981–82; *United States v. Jarrad,* 754 F.2d 1451, 1456–57 (9th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985); *United States v. Coachman,* 727 F.2d 1293, 1297–98 (D.C.Cir. 1984).

### III

Appellant also complains of two instances of alleged prosecutorial impropriety. First, he objects that a phrase in the prosecutor's 215–line opening statement was not borne out by the evidence. The prosecutor predicted Miller would testify that in the course of the March 27 transaction he asked appellant, "Do you want the money now? Is the juice here?," to which appellant replied, "No, the juice isn't here, it's on its way." That preview of Miller's testimony was accurate, except for his omission of the word "juice":

> [Appellant] asked me was my money ready, and I said "Yes, my money is ready. Would you like to see it?" He said, "No, that's okay. My people aren't here yet ... and you're going to have to wait a short while."

■ The inaccuracy does not call for reversal. Since "[a] criminal trial does not unfold like a play with actors following a script," *Geders v. United States,* 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976), we cannot expect the actual testimony to mimic the opening statement verbatim. Departures from the prosecutor's preview of evidence—even ones more egregious than the deviation at issue here, *see Frazier v. Cupp,* 394 U.S. 731, 736, 89 S.Ct. 1420, 1423, 22 L.Ed.2d 684 (1969)—are tolerated, so long as the prosecutor does not tout them and no other circumstance suggests that the statement could have prevented the jury from properly appraising the evidence. *See id.; compare Jones v. United States,* 338 F.2d 553, 554 (D.C. Cir.1964). The discrepancy here was so modest that, especially in light of the overwhelming evidence of guilt, its correction could have made no difference. *See Webster v. Rees,* 729 F.2d 1078, 1080–81 (6th Cir.1984) ("inexcusable" closing argument does not require granting of new trial on habeas corpus when evidence of guilt overwhelming).

The second instance of alleged prosecutorial impropriety, also raised for the first time on appeal, is based upon a sentence of the prosecutor's rebuttal. In response to appellant's sole defense—that Washington's absence deprived him of a fair trial—the prosecutor said:

> But do you think, Ladies and Gentlemen, that these witnesses would come in and tell you something about the existence of a person Greg Washington, who they know—that Washington would come in and say, "Nope, it didn't happen that way. Jordan is not the one who did it"?

*Do you think we would be here if that was not the case?* He got money, he got consideration. No question. But he's not on trial. What you think of him is immaterial. *What he would add—well you can think of that, but that is speculation.*

(Emphasis added). From the underscored language, appellant infers a statement that the government (1) would not have prosecuted him were he not guilty and (2) had access to incriminating information that was not before the jury. Of course, bald statements to that effect could easily be reversible error. *See, e.g., United States v. Bess,* 593 F.2d 749, 754–57 (6th Cir.1979); *United States v. Lamerson,* 457 F.2d 371, 372 (5th Cir.1972) (per curiam). But this is not a case, such as those cited by appellant (each of which involved a statement objected to at trial), in which the prosecutor unequivocally attested to the defendant's guilt, *see Bess,* 593 F.2d at 753, vouched for the credibility of the government's witnesses, *see Mathis v. United States,* 513 A.2d 1344, 1347, 1348 (D.C.1986), or implied that the government only prosecutes those who are guilty, *see Bess,* 593 F.2d at 753 ("If the United States did not believe the defendant was guilty ... this case, of course, would have never been presented to you in the first place."); *Lamerson,* 457 F.2d at 372 ("had [defendant] not committed a crime, we would not be" prosecuting him); *Hall v. United States,* 419 F.2d 582, 587 (5th Cir.1969) ("we try to prosecute only the guilty").

▇ Here, the jury most probably perceived the comments as an effort to refocus its attention on the evidence before it, and away from speculation over what was not. *Cf. United States v. Young,* 470 U.S. 1, 11–13, 105 S.Ct. 1038, 1044–45, 84 L.Ed.2d 1 (1985). At any rate, given such strong evidence of guilt in this case, the statement at issue could not have so "undermine[d] the fundamental fairness of the trial" as to amount to plain error. *Id.* at 16, 105 S.Ct. at 1047; *see Harris v. United States,* 402 F.2d 656, 656–57 (D.C.Cir.1968).

Nonetheless, we admonish prosecutors not to try to infiltrate forbidden comments into summation by couching them in ambiguity. In a close case, such behavior would only deny the appellate court the necessary assurance of fairness.

## IV

Appellant also raises several challenges to his sentence. He argues that the sentence was improperly enhanced, to a prison term of 10 to 30 years and a fine of $250,-000 on each count, because his prior Maryland PCP conviction was not related to a "depressant or stimulant substance" within the meaning of 21 U.S.C. § 841(b)(1)(B) (Supp. III 1985). He also asserts that the prosecutor and District Court failed to follow the requisite enhancement procedures under 21 U.S.C. § 851(a) (1982) and 21 U.S.C. § 851(b) (1982), respectively.[1]

---

1. We reject summarily appellant's challenge to the District Court's clarification—10 minutes after adjourning the initial sentencing hearing—that the two sentences were to be served consecutively. It has never been doubted that a district court retains the power to recall the defendant and increase the severity of the sentence at any time before he begins to serve the sentence, and *a fortiori* before he leaves the courthouse. *See United States v. Busic,* 639 F.2d 940, 948 (3d Cir.), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981); *Borum v. United States,* 409 F.2d 433, 440–41 & n. 36 (D.C.Cir.1967), *cert. denied,* 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969); *Walton v. United States,* 202 F.2d 18, 19–20 (D.C.Cir.1953); *see also* 18 U.S.C. § 3568 (1982) (repealed effective Nov. 1, 1987) (sentence runs from date defendant committed to detention). Contrary

to appellant's assertion, *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), far from casting doubt on that authority, expressly reaffirms it. *See id.* at 134, 139, 101 S.Ct. at 435–36, 438. The Court left open only the question whether the double jeopardy clause prohibits a district court from recalling the defendant even *after* service begins. While other courts of appeals have since split on the issue, *compare United States v. Lundien,* 769 F.2d 981, 984–87 (4th Cir.1985) (rejecting double jeopardy challenge but suggesting due process may limit court's authority to recall), *cert. denied,* — U.S. —, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986), *and United States v. Jefferson,* 714 F.2d 689, 706–07 (7th Cir.1983), *and United States v. Busic,* 639 F.2d at 948, *with United States v. Naas,* 755 F.2d 1133, 1136–38 (5th Cir.1985), we need not address it at this juncture. We hold

## A

The penalty for violation of 21 U.S.C. § 841(a) varies with the nature and amount of controlled substance involved. Every controlled substance is categorized into one of five "schedules," depending primarily upon its potential for abuse and the severity of the dependence that it induces. *See* 21 U.S.C. § 812(b) (1982). Congress initially placed PCP in schedule III, *id.* § 812(c) (schedule III)(b)(7), applicable to substances having "potential for abuse less than the drugs or other substances in schedules I and II," which abuse "may lead to moderate or low physical dependence or high psychological dependence," *id.* § 812(b)(3)(A), (C). In 1978, the Attorney General[2] transferred PCP from schedule III to the more stringently regulated schedule II. 43 FED.REG. 3359 (1978); *see* 21 C.F.R. § 1308.12(e)(3) (1986); *see also* 21 U.S.C. § 811(a) (1982) (authority to transfer between schedules). Schedule II includes substances having "a high potential for abuse [which] ... may lead to severe psychological or physical dependence," 21 U.S.C. § 812(b)(2)(A), (C).

Most violations of § 841(a) involving schedule II drugs, including those—like appellant's—that involve less than 500 grams of PCP, are generally punishable by a prison term of up to 15 years, a fine of up to $125,000, or both. *See* 21 U.S.C. § 841(b)(1)(B) (Supp. III 1985). However, the district court may enhance the prison term to 30 years, the fine to $250,000, or both, if the defendant has a prior conviction under a "law of a State ... relating to narcotic drugs, marihuana, or depressant

or stimulant substances...." *Id.* The definition of "depressant or stimulant substance," on which the government relies to bring PCP within the enhancement provision, includes in relevant part:

> any drug which contains any quantity of a substance which the Attorney General, after investigation, has found to have, and by regulation designated as having, a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect.

21 U.S.C. § 802(9)(D) (1982).

The Attorney General did indeed designate PCP and its derivatives as "substances having a depressant effect on the central nervous system" and a "high potential for abuse." 43 FED.REG. 3359 (1978); 42 FED.REG. 63,647, 63,648 (1977); *see* 21 C.F.R. § 1308.12(e)(3) (1986). However, he made those findings only in the context of transferring PCP from schedule III to schedule II. There is no doubt that the Attorney General could have incorporated PCP into the § 802(9)(D) definition by expressly invoking that provision. *See Hoffmann-La Roche, Inc. v. Kleindienst*, 478 F.2d 1, 3–5 & n. 2 (3d Cir.1973). The crux of the dispute is whether the findings accompanying that schedule transfer, without express recognition that they also satisfied the definition of a "stimulant or depressant substance" under § 802(9)(D), sufficed to do so.[3]

In support of his position that the findings did not suffice, appellant invokes only the unexceptionable maxim that "[i]f the meaning or intent of the statute is ambigu-

---

only that enhancement of the sentence before appellant could possibly have left the courthouse did not violate the double jeopardy clause.

2. The Attorney General delegated his authority to make such findings to the Administrator of the Drug Enforcement Administration. 28 C.F.R. § 0.100(b) (1986); *see* 21 U.S.C. § 871(a) (1982) (Attorney General may delegate functions). For simplicity, we refer to the Administrator as the Attorney General.

3. In placing PCP initially in schedule III, Congress expressly described PCP as a "substance[ ]

having a depressant effect on the central nervous system," 21 U.S.C. § 812(c)(schedule III)(b) (1982), and implicitly characterized PCP as having a "potential for abuse," *id.* § 812(b)(3)(A). The Attorney General could conceivably have disagreed with those congressional findings, yet nevertheless have declined to remove PCP from the list. In light of our conclusion that the Attorney General's findings upon transferring PCP between schedules constituted findings under § 802(9)(D) as well, we need not address whether his maintenance of PCP in schedule III would have.

ous, the ambiguity should be resolved in favor of lenity." Reply Brief for Appellant at 12 n. 3. But here the statutory language is unambiguous. The ambiguity, if any, is in the Attorney General's intent. And nothing in the definitional provision suggests that to activate § 802(9)(D) the Attorney General must expressly invoke it or even recognize its existence.[4]

To be sure, Congress could have simplified the statute by providing that enhancement is permissible whenever the defendant has a prior conviction involving a substance that is on one of several designated schedules. That Congress could have expressed its meaning in clearer or simpler language, however, does not deprive of meaning the language that Congress chose.

■ We might not be so quick to read that language literally if it either imputed to Congress an implausible intent or led to implausible results. Neither is the case. It is perfectly plausible that Congress was aware that findings relating to a schedule change under § 811 might collaterally affect the § 802(9)(D) definition of "depressant or stimulant substance." When Congress passed the Act, the term "depressant or stimulant substance," with two exceptions, appeared only in sections (or subsections) that also referred to one or more of the schedules. *See* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, tit. II, § 202(d), 84 Stat. 1236, 1252 (repealed 1984) (exemption for certain mixtures containing "any depressant or stimulant substance in paragraph (a) or (b) of schedule III or in schedule IV or V"); *id.*, tit. II, § 401(b), 84 Stat. 1261 (codified as amended at 21 U.S.C. § 841(b) (Supp. III 1985)) (each of four penalty-enhancement provisions applied to violations involving substances on one or more of the schedules or of any "other law ... relating to ... depressant or stimulant substances"); *id.*, tit. II, § 402(c)(2)(B), 84 Stat. 1263 (codified at 21 U.S.C. § 842(c)(2)(B)

(1982)); *id.*, tit. II, § 403(c), 84 Stat. 1263–64 (codified at 21 U.S.C. § 843(c) (1982)); *id.*, tit. III, § 1006(b), 84 Stat. 1288 (codified at 21 U.S.C. § 956(b) (1982)) (exemption nearly identical to § 202(d)). Thus, the inference that the drafters expected the Attorney General's decision locating a drug on any of the schedules to have penalty-enhancement consequences, far from being implausible, is virtually unavoidable.

Further, the clear language makes perfect sense. A prior conviction under § 841(a) involving PCP enhances the defendant's maximum sentence upon conviction of practically any other § 841(a) violation. *See* 21 U.S.C. § 841(b)(1)–(4) (Supp. III 1985).[5] It would be anomalous to halve another defendant's maximum penalty merely because an identical prior PCP conviction was under state rather than federal law.

### B

We next address appellant's assertion that his sentence is invalid because neither the prosecutor nor the District Court followed the requisite procedures for enhancement.

■ A district court may not enhance a § 841(b) sentence on the basis of prior convictions "unless before trial, or before entry of a plea of guilty," the prosecutor has filed an information identifying the prior convictions. 21 U.S.C. § 851(a)(1) (1982). Appellant asserts that the prosecutor's filing of the information—after the judge heard evidence on and denied appellant's motion to suppress, but before voir dire and empaneling of the jury—was untimely. It is true that when a trial "begins" may depend upon the purpose of the inquiry. However, appellant identifies no context, and we know of none, in which a trial is deemed to begin before empaneling of the jury. *See, e.g., Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43

---

4. We need not consider whether such a *de facto* incorporation of findings can operate to define criminal conduct. *See* 18 U.S.C. § 842(d)(5), (i)(3) (1982).

5. The same was true under the version of the statute that controlled when the Attorney General made the transfer. *See* 21 U.S.C. § 841(b)(1)–(3) (1976).

L.Ed.2d 265 (1975) (jeopardy does not attach until jury is sworn); *Hopt v. Utah*, 110 U.S. 574, 578, 4 S.Ct. 202, 204, 28 L.Ed. 262 (1884) (criminal defendant's right to be present at trial attaches "when the work of empanelling the jury begins"); *New Jersey v. Chesimard*, 555 F.2d 63, 65 n. 1 (3d Cir.1977) (filing of removal petition "before trial" under 28 U.S.C. § 1446(c), means "before proceedings for empanelling a jury") (citations omitted); *Greenwood v. Stevenson*, 88 F.R.D. 225, 229 (D.R.I.1980) (10 days "prior to trial" for purposes of offer of judgment under FED.R.CIV.P. 68 counted from day trial judge calls proceedings to order and commences hearing case, even if jury selected and sworn earlier).

Appellant asserts that adoption of the universal understanding, that a "trial" never begins any earlier than the beginning of voir dire, would defeat the twofold purpose of § 851(a): "to give notice to the defendant so that he may reasonably assess whether to plead guilty or proceed to trial, and ... to avoid the 'unfairness' of increasing the potential punishment after the trial has begun," *Arnold v. United States*, 443 A.2d 1318, 1326 (D.C.1982). He asserts (although he did not at trial) that the suppression hearing—complete with witness testimony, cross-examination, and oral argument—so embroiled him and his attorney in the heat of litigation that they had no time "to step back and calmly discuss whether they [were] going to go to trial or not—they [were] in trial." Brief for Appellant at 15. The short answer is that if Congress had intended "before trial" to mean "enough time before trial to allow the defendant 'to step back and calmly discuss ... whether to go to trial,'" it would have so provided. *Compare* 21 U.S.C. § 849(a) (1982) (repealed effective Nov. 1, 1987) (one section away from § 851 Congress requires filing of information that would enhance sentence within "reasonable time before trial"); 18 U.S.C. § 3575 (1982) (same). Further, that § 851(a) merely requires that the information be filed "before entry of a plea of guilty" belies any inference that it guarantees a calm meditation period; and if the information takes a defendant by surprise nothing precludes him from requesting the trial judge for a short recess to regroup. Since we see no reason to believe that Congress intended to use "trial" to refer to some earlier moment (and without addressing exactly when "trial" begins under § 851(a)), we hold that the information was timely filed. *See United States v. Gill*, 623 F.2d 540, 542–43 (8th Cir.) (under § 851(a), nonjury trial begins when court accepts defendant's waiver of jury and begins to hear evidence), *cert. denied*, 449 U.S. 873, 101 S.Ct. 214, 66 L.Ed.2d 94 (1980); *Arnold v. United States*, 443 A.2d at 1323–28 (under similar D.C. Code provision "prior to trial" means before voir dire begins).

■ The government concedes, however, that the District Court's failure to ask appellant personally whether he affirms or denies the previous conviction and to advise appellant that his failure to challenge his prior conviction then would constitute a waiver of the right for all future purposes, *see* 21 U.S.C. § 851(b) (1982), requires us to remand for resentencing. *See United States v. Ramsey*, 655 F.2d 398, 400 n. 7 (D.C.Cir.1981). Of course, if on remand appellant does not successfully challenge the Maryland conviction, the District Court is free to reimpose the same sentence. *See United States v. Cevallos*, 538 F.2d 1122, 1128 (5th Cir.1976).

\* \* \*

We affirm appellant's conviction in all respects and remand for resentencing in compliance with 21 U.S.C. § 851(b).

*So ordered.*