USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1854

 STANLEY PROU,

 Petitioner, Appellant,

 v.

 UNITED STATES OF AMERICA,

 Respondent, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Ronald R. Lagueux, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Coffin, Senior Circuit Judge,
 
 and Boudin, Circuit Judge.
 
 
 
 Elizabeth L. Prevett, Federal Defender Office, with whom Owen
S. Walker, Federal Public Defender, and Stanley Prou, pro se ipso,
were on brief, for appellant.
 Donald C. Lockhart, Assistant United States Attorney, with
whom Margaret E. Curran, United States Attorney, and Stephanie S.
Browne, Assistant United States Attorney, were on brief, for
appellee.

December 17, 1999

 
 SELYA, Circuit Judge. The mandatory minimum sentence for
distribution of a controlled substance ordinarily doubles if the
accused has a prior felony drug conviction. See 21 U.S.C. 841. 
But this enhancement accrues only if the government elects to
pursue it. In that event, the government must file, within a
specified time frame, an information signaling its intention and
identifying the previous conviction(s) on which it relies. See id.
 851(a)(1).
 In this appeal, petitioner-appellant Stanley Prou
challenges an enhanced sentence imposed on the basis of a
concededly untimely filing. He shrugs off the fact that the issue
was not raised on direct appeal, claiming that the usual rules of
procedural default do not apply. Although this claim derives
support from decisions of two sister circuits, we reject it. As a
fallback, Prou asserts that he has shown cause and prejudice
sufficient to excuse his procedural default. We agree with this
assertion. Consequently, we reverse the order dismissing Prou's
section 2255 petition, vacate the enhanced sentence, and remand for
resentencing.
 I
 The relevant facts are essentially undisputed. On April
6, 1995, a federal grand jury indicted the petitioner for
conspiring to distribute (or to possess with intent to distribute)
cocaine, aiding and abetting such conduct, and carrying a firearm
in relation to a drug-trafficking crime. See 21 U.S.C. 841,
846; 18 U.S.C. 2, 924(c). On June 13, the United States
Attorney filed a so-called "Rule 404(b) notice" disclosing the
government's intention to introduce evidence of the petitioner's
1993 state court conviction for possession of marijuana with intent
to distribute. A jury was empaneled (but not sworn) on June 22. 
Nineteen days later, the government filed the crucial section
851(a)(1) information, again referencing the 1993 conviction. The
court (Pettine, J.) administered the jury oath on August 21. Trial
proceeded and the jurors found the petitioner guilty on all counts.
 The petitioner's court-appointed attorney raised several
objections to the presentence investigation report, including a
claim that the petitioner's 1993 state conviction was insufficient
to trigger the statutory enhancement because it was for a
misdemeanor, not a felony. Counsel did not succeed in scuttling
the enhancement, but he did convince Judge Pettine to pare the drug
quantity and eliminate the double-counting of a probation
violation. These successes had the effect of shrinking the
guideline sentencing range for the drug-trafficking counts from
168-210 months to 78-97 months. Basing the sentence on one
kilogram of cocaine instead of five also reduced the mandatory
minimum sentence from ten years to five. Compare 21 U.S.C. 
841(b)(1)(A) with id. 841(b)(1)(B). Nevertheless, defense
counsel did not question the timeliness of the section 851(a)(1)
information, and the ensuing enhancement boosted the petitioner's
sentence to ten years. In addition, Judge Pettine imposed a five-
year consecutive sentence on the firearms count.
 The petitioner unsuccessfully pursued a direct appeal,
see 101 F.3d 106 (1st Cir. 1996) (table), cert. denied, 520 U.S.
1129 (1997), but his court-appointed appellate counsel never
questioned the timeliness of the section 851(a)(1) information. 
Prou then filed a pro se motion under 28 U.S.C. 2255. In an
accompanying memorandum, he asseverated, as part of an ineffective
assistance of counsel claim, that his attorneys had "failed to
object to untimely filing of enhancement 21 U.S.C. 841(b) 21
U.S.C. 851 by the government." The United States ignored this
allegation in its response. The petitioner, however, reiterated
the point in his rejoinder, repeating the quoted language and
elaborating upon it:
 The government filed 18 U.S.C. 851 late,
 that section requires filing before jury
 selection begins. Which would allow the
 petitioner ample time to determine whether he
 should enter a plea or go to trial, and to
 plan his trial strategy with full knowledge of
 the consequence of a potential guilty verdict. 
 See . . . Arnold v. United States, 443 A.2d
 1318, 1326 (D.C. 1982); (information not
 timely filed after jury selection process had
 begun.) . . . .

He then attempted to demonstrate "cause" and "prejudice."
 Judge Pettine had retired, and the section 2255 motion
came before Chief Judge Lagueux, who denied it summarily (without
a hearing and without specifically addressing the petitioner's
section 851(a)(1) claim). Judge Lagueux thereafter refused to
issue a certificate of appealability (COA). See 28 U.S.C. 2253. 
On subsequent application, we granted a COA limited to the
following question: "Whether the district court was without
jurisdiction to impose an enhanced sentence when the information
required by 21 U.S.C. 851 to be filed 'before trial' was filed
after the jury was impaneled?" We simultaneously appointed counsel
for the petitioner and indicated specific areas to be addressed in
subsequent briefing.
 II
 We quickly parry a preliminary thrust. The government
declares that the petitioner failed adequately to raise the
timeliness of the section 851(a)(1) information in his pro se
motion for relief under section 2255. We think not.
 In his motion, the petitioner specifically mentioned
ineffective assistance of counsel resulting from an asserted
failure to object to the untimeliness of the informational filing. 
While the petitioner made this allegation pithily, its gist was
clear and distinct. The petitioner then reiterated the point in
his reply memorandum, citing relevant authority. We conclude that
further elaboration was unnecessary. The petitioner's submissions
sufficiently charged the court and the government with notice of
the claim, especially since the described error virtually jumps off
the face of the docket. It would be unreasonable to require more
from a pro se prisoner. See Lema v. United States, 987 F.2d 48, 54
n.5 (1st Cir. 1993); cf. Haines v. Kerner, 404 U.S. 519, 520-21
(1972) (per curiam) (holding pro se complaints to less stringent
standards than pleadings drafted by counsel).
 III
 The petitioner posits that the absence of a timeous
section 851(a)(1) information deprived the sentencing court of
jurisdiction to impose the enhanced sentence. Because
jurisdictional failings are immune from normal rules of waiver and
procedural default, his reasoning goes, the district court had an
obligation to consider the claim on collateral review despite his
failure to raise it either before sentencing or on direct appeal. 
The government resists this syllogism. It urges us to draw a
distinction between nonwaivable issues of subject-matter
jurisdiction and waivable issues of statutory authorization, and to
locate section 851(a)(1) in the latter category a placement
which, under United States v. Frady, 456 U.S. 152, 167 (1982),
would require a showing of "cause" and "actual prejudice" to keep
the issue in play. In sifting through these conflicting
approaches, our review is plenary. See United States v. McGill, 11
F.3d 223, 226 n.2 (1st Cir. 1993); see also Scarpa v. Dubois, 38
F.3d 1, 9 (1st Cir. 1994) (applying de novo review to legal
determinations in habeas proceeding).
 A
 We do not write on an empty slate. In Hardy v. United
States, 691 F.2d 39 (1st Cir. 1982), a panel of this court,
speaking through then-Judge Breyer, explained that a district court
lacks authority to impose the statutory enhancement unless the
government has complied with section 851(a)(1)'s temporal
strictures. See id. at 41. Judge Breyer expressed doubt as to
whether a section 2255 petitioner raising the issue for the first
time on collateral review had to show cause and prejudice under
Frady, but found it unnecessary to answer the question because
Hardy cleared both hurdles. See Hardy, 691 F.2d at 41-42. We
apparently resolved this doubt a decade later in Suveges v. United
States, 7 F.3d 6, 10 (1st Cir. 1993), in which we ruled that
failure to raise a section 851(a)(1) objection on direct appeal
constituted a procedural default, thus requiring a section 2255
petitioner to satisfy Frady. There is no indication, however, that
Suveges sought to exempt himself from the cause-and-prejudice
paradigm. In all events, our ambivalence on this issue soon
resurfaced. See United States v. Romero-Carrion, 54 F.3d 15, 17-18
(1st Cir. 1995) (dictum) (stating that "failure to file the
information required by section 851(a) deprives the district court
of jurisdiction to impose an enhanced sentence" and suggesting that
"harmless error" analysis is inapposite).
 The government contends that Suveges represents binding
circuit precedent and thus forecloses us from reaching the section
851(a)(1) issue in the absence of cause and prejudice. But Suveges
at one point described section 851(a)(1)'s strictures as
"jurisdictional," 7 F.3d at 10, and two courts of appeals since
have held that section 851(a)(1) claims are not subject to the
usual rules of procedural default, see Harris v. United States, 149
F.3d 1304, 1306-09 (11th Cir. 1998); Kelly v. United States, 29
F.3d 1107, 1112-14 (7th Cir. 1994). Given this scumbled tableau,
we think it appropriate to revisit the question in some depth. Cf.
Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995)
(explaining that the "law of the circuit" rule may give way in
"those relatively rare instances in which authority that postdates
the original [panel] decision, although not directly controlling,
nevertheless offers a sound reason for believing that the former
panel, in light of fresh developments, would change its collective
mind").

 B
 Prior to 1970, a federal statute required the United
States Attorney, in a drug case, to advise the court after
conviction but before sentencing whether the defendant was a
recidivist and therefore subject to a mandatory enhanced sentence. 
See 26 U.S.C. 7237(c)(2) (1964). Under this provision, we upheld
an enhanced sentence when the government filed the information
after sentencing but the defendant nonetheless admitted the
existence of the prior conviction. See King v. United States, 346
F.2d 123, 124 (1st Cir. 1965); see also United States v. Noland,
495 F.2d 529, 531 (5th Cir. 1974) (collecting cases to support the
proposition that substantial compliance sufficed).
 The Comprehensive Drug Abuse Prevention and Control Act
of 1970 (the Act), 21 U.S.C. 801-971, repealed this system,
substituting the present protocol:
 No person who stands convicted of an offense
 under this part shall be sentenced to
 increased punishment by reason of one or more
 prior convictions, unless before trial, or
 before entry of a plea of guilty, the United
 States attorney files an information with the
 court (and serves a copy of such information
 on the person or counsel for the person)
 stating in writing the previous convictions to
 be relied upon. Upon a showing by the United
 States attorney that facts regarding prior
 convictions could not with due diligence be
 obtained prior to trial or before entry of a
 plea of guilty, the court may postpone the
 trial or the taking of the plea of guilty for
 a reasonable period for the purpose of
 obtaining such facts.

21 U.S.C. 851(a)(1).
 The proscriptive language of the section ("No person . .
. shall be sentenced to increased punishment . . . unless . . .")
and the specific provision for postponement leave no doubt that the
procedural requirements of section 851(a)(1) are to be strictly
enforced. See United States v. Belanger, 970 F.2d 416, 418 (7th
Cir. 1992); United States v. Williams, 899 F.2d 1526, 1529 (6th
Cir. 1990); Noland, 495 F.2d at 533. For present purposes, two
elements of the new scheme deserve special emphasis. First, the
law gives the prosecutor discretion to forgo a sentence enhancement
altogether. Second, the prescribed information must be filed
before trial or entry of a guilty plea. The first change reflects
a preference for a more flexible penalty structure. See H.R. Rep.
No. 91-1444, at 10-11 (1970), reprinted in 1970 U.S.C.C.A.N. 4566,
4575-76; see also Noland, 495 F.2d at 532-33. The second change 
requiring notice before trial "allows the defendant ample time to
determine whether he should enter a plea or go to trial, and to
plan his trial strategy with full knowledge of the consequences of
a potential guilty verdict." United States v. Johnson, 944 F.2d
396, 407 (8th Cir. 1991).
 Sometimes courts have described the new scheme's
procedural requirements as "jurisdictional." See, e.g., Romero-
Carrion, 54 F.3d at 17-18; Belanger, 970 F.2d at 418; United States
v. Wright, 932 F.2d 868, 882 (10th Cir. 1991); United States v.
Olson, 716 F.2d 850, 853 (11th Cir. 1983); United States v. Allen,
566 F.2d 1193, 1196 (3d Cir. 1977); United States v. Cevallos, 538
F.2d 1122, 1125 (5th Cir. 1976). On other occasions, courts have
been more circumspect. See, e.g., United States v. Levay, 76 F.3d
671, 674 & n.4 (5th Cir. 1996) (holding that failure by the
prosecutor to file a section 851(a)(1) information on time
"prevents," "preclude[s]," and "bar[s]" a sentence enhancement);
United States v. Smith, 984 F.2d 1084, 1087 (10th Cir. 1993) 
(holding that noncompliance with section 851(a)(1) deprives the
trial court of "authority" to impose an enhanced sentence); Noland,
495 F.2d at 533 (same). The D.C. Circuit succinctly stated the
case for caution:
 "Jurisdiction" is a word of many, too many,
 meanings. We prefer to put the matter in
 different terms. A prosecutor's compliance
 with 851(a)(1) is simply a necessary
 condition to a judge's imposing an enhanced
 sentence on the basis of a defendant's prior
 convictions.

United States v. Vanness, 85 F.3d 661, 663 n.2 (D.C. Cir. 1996).
 Without exception, the cases discussed above that have
called the procedural requirements of section 851(a)(1)
"jurisdictional" arose on direct appeal and nothing turned on the
choice of phrase. The stakes are quite different when the issue of
timeliness surfaces for the first time in a collateral proceeding. 
Thus, the classification of section 851(a)(1)'s timeliness
requirement as jurisdictional proved all-important in Harris and
Kelly; in each of those cases, the court permitted a habeas
petitioner to advance a newly-emergent section 851(a)(1) claim on
collateral review without any showing of cause or prejudice,
espousing the theory that jurisdictional issues cannot be waived or
forfeited. See Harris, 149 F.3d at 1306-09; Kelly, 29 F.3d at
1112-14.
 The petitioner invites us to join these courts. With
respect, we decline the invitation. Whether or not the prosecution
files a timely section 851(a)(1) information, a federal district
court plainly possesses subject-matter jurisdiction over drug
cases. See 18 U.S.C. 3231 (conferring original jurisdiction "of
all offenses against the laws of the United States"). This
jurisdiction necessarily includes the imposition of criminal
penalties. Once subject-matter jurisdiction has properly attached,
courts may exceed their authority or otherwise err without loss of
jurisdiction. See United States v. Wey, 895 F.2d 429, 431 (7th
Cir. 1990) ("Courts may err, even offend the Constitution, without
losing subject-matter jurisdiction."); cf. Blackledge v. Perry, 417
U.S. 21, 30 (1974) (indicating that only claims that go "to the
very power of the State to bring the defendant into court to answer
the charge brought against him" implicate subject-matter
jurisdiction). Thus, the only question that legitimately arises
from the prosecution's late filing of a section 851(a)(1)
information concerns the court's authority to impose an enhanced
sentence. This is simply not a question of subject-matter
jurisdiction. See Vanness, 85 F.3d at 663 n.2.
 Judge Learned Hand once wrote that words can be
"chameleons, which reflect the color of their environment." 
Commissioner v. National Carbide Corp., 167 F.2d 304, 306 (2d Cir.
1948). The confusion in the case law dealing with section
851(a)(1) probably results from the chameleon-like quality of the
term "jurisdiction." As we recently observed, "the word
'jurisdiction' is protean and has a wide variety of meanings,
depending on the context in which it is used." United States v.
Swiss Am. Bank, 191 F.3d 30, 40 (1st Cir. 1999). The phenomenon
can easily be illustrated; take, for example, subject-matter
jurisdiction and personal jurisdiction (both of which are
potentially encompassed by a reference to "jurisdiction"). The
requirement of subject-matter jurisdiction relates directly to the
constitutional power of a federal court to entertain a cause of
action. For this reason, the question of subject-matter
jurisdiction is always open: courts at every stage of the
proceedings are obligated to consider the issue even though the
parties have failed to raise it. See Insurance Corp. of Ireland v.
Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982); United
States v. Horn, 29 F.3d 754, 767-68 (1st Cir. 1994); Lopez v.
Arraras, 606 F.2d 347, 350 (1st Cir. 1979). Personal jurisdiction
is a horse of a different hue. That jurisdictional requirement
exists to protect parties' constitutional rights and therefore is
subject to the normal rules of waiver and procedural default. See
Insurance Corp., 456 U.S. at 702-03; General Contracting & Trading
Co. v. Interpole, Inc., 940 F.2d 20, 22 (1st Cir. 1991).
 Another example, of particular pertinence here, arises
out of the unfortunate penchant of judges and legislators to use
the term "jurisdiction" to describe the technically distinct notion
of a court's authority to issue a specific type of remedy in a case
in which the threshold requirements of subject-matter and personal
jurisdiction are not open to question. See Steel Co. v. Citizens
for a Better Env't, 523 U.S. 83, 89-93 (1998); International Union
of Operating Eng'rs, Local 150 v. Rabine, 161 F.3d 427, 429-31 (7th
Cir. 1998); United States v. Lopez-Pena, 912 F.2d 1542, 1547 n.6
(1st Cir. 1989), vacated but later reinstated, 944 F.2d 51 (1st
Cir. 1991) (en banc). Steel Co. itself is emblematic. There, the
Court rejected the view that the reference to "jurisdiction"
contained in 42 U.S.C. 11046(c) implicated subject-matter
jurisdiction, concluding instead that it should be read "as merely
specifying the remedial powers of the court, viz., to enforce the
violated requirement and to impose civil penalties." Id. at 90.
 We believe that courts historically have used the word
"jurisdictional" in much the same way to describe the operation of
section 851(a)(1). The imposition of a sentence is the criminal-
law analogue to the granting of a remedy in a civil action and
neither implicates subject-matter jurisdiction. Accordingly, we
hold that noncompliance with the procedural regime established by
section 851(a)(1) deprives the sentencing court of authority to
impose an enhanced sentence no more and no less. Here, then, the
lower court was empowered to render a binding judgment concerning
a federal crime, and the fact that the judgment actually entered
embodied a sentence that surpassed the level authorized by Congress
did not divest the court of jurisdiction over the subject matter.
 C
 Seen in this light, the operative question reduces to
whether section 851(a)(1) is nonwaivable notwithstanding its lack
of impact on subject-matter jurisdiction. Citing the mandatory
language of the statute, the petitioner hypothesizes that an
enhancement based on an untimely filing, like a judicial decree
rendered in the absence of subject-matter jurisdiction, is null and
void. We reject this hypothesis.
 That section 851(a)(1) is phrased in obligatory terms
cannot be determinative of a waiver inquiry. If it were, a whole
range of constitutional and statutory provisions employing
compulsory language would give rise to nonwaivable claims. The
case law belies so sweeping a generalization. For instance,
statutes of limitations often speak in mandatory terms, see, e.g.,
18 U.S.C. 3282 (providing that "no person shall be prosecuted,
tried, or punished" after a specified period of time), yet defenses
premised on the government's failure to satisfy statutes of
limitations can be waived, see, e.g., United States v. Spector, 55
F.3d 22, 24-25 (1st Cir. 1995); Acevedo-Ramos v. United States, 961
F.2d 305, 307-09 (1st Cir. 1992). Cf. Peguero v. United States,
119 S. Ct. 961, 964-65 (1999) (requiring section 2255 petitioner to
show prejudice when claiming that the district court neglected to
comply with former Fed. R. Crim. P. 32(a)(2)'s command that, after
imposing sentence, the court "shall advise the defendant of the
defendant's right to appeal").
 On this point, we regard United States v. Baucum, 80 F.3d
539 (D.C. Cir. 1996) (per curiam), as instructive. There, the D.C.
Circuit refused to entertain an untimely constitutional challenge
to a notice served under 21 U.S.C. 860(a) (which, like section
851(a)(1), triggers increased penalties for certain violations of
21 U.S.C. 841). See id. The court explained that
"constitutional defects that do not reflect upon the power of the
prosecution to initiate proceedings can be waived (and thus do not
affect the court's subject-matter jurisdiction)." Id. at 544. It
follows inexorably that if constitutional shortcomings can be
waived, save only those that go to the power to bring the defendant
into court, then statutory miscues likewise can be waived, subject
only to the same caveat. This principle is dispositive here, for
the defect upon which the petitioner relies concerns the penalty,
not the government's power to initiate the underlying criminal
proceeding.
 As a last gasp, the petitioner remarks the discretion
inherent in section 851(a)(1). Because the statute vests this
discretion in the Executive Branch, he asseverates, permitting an
enhancement based on an unpunctual filing would offend separation-
of-powers tenets. This asseveration lacks force.
 Although section 851(a)(1) empowers the Executive Branch
either to seek or to abjure an enhanced sentence, the statute's
pretrial filing and service requirements serve an entirely
different purpose: they afford the accused adequate time to make
a fully informed decision whether to plead or stand trial. See
Johnson, 944 F.2d at 407. Because section 851(a)(1)'s temporal
requirements exist for the defendant's benefit, it makes perfect
sense to give the defendant the power to waive (and the obligation
not to forfeit) strict compliance with them. In this respect,
section 851(a)(1) is a fair congener to the panoply of fundamental
constitutional guarantees that have been held subject to the usual
rules of waiver and procedural default. See United States v.
Mezzanatto, 513 U.S. 196, 201 (1995) (listing examples); Peretz v.
United States, 501 U.S. 923, 936-37 (1991) (same). Consequently,
we perceive no separation-of-powers problem.
 Nor do we discern any inequity in applying the customary
rules of waiver and procedural default in section 851(a)(1) cases. 
In general, waiver and procedural default rules serve the public
interest in the finality of criminal judgments. See Frady, 456
U.S. at 166. Moreover, requiring a defendant to raise an issue at
trial and/or on direct appeal "channel[s], to the extent possible,
the resolution of various types of questions to the stage of the
judicial process at which they can be resolved most fairly and
efficiently." Reed v. Ross, 468 U.S. 1, 10 (1984). These general
precepts fit this context well. Enforcing the procedural default
doctrine encourages defendants to present section 851(a)(1) claims
at the earliest opportunity and thereby promotes accuracy and
economy in sentencing, as well as repose.
 To say more on this point would be supererogatory. Upon
reexamination, we reaffirm our holding in Suveges: a defendant's
failure to object at sentencing and/or on direct appeal to the
untimeliness of the government's section 851(a)(1) information
constitutes a procedural default, leaving the issue open to
collateral attack only if the defendant can show cause and
prejudice. See Suveges, 7 F.3d at 10. It is to those issues that
we now turn.
 IV
 On no occasion prior to filing his section 2255 motion
did the petitioner object to his enhanced sentence on the ground
that the section 851(a)(1) information was untimely. Thus, he must
show both "cause" excusing his procedural default and "actual
prejudice" resulting from the unpreserved error in order to obtain
collateral relief. Frady, 456 U.S. at 167-68. The petitioner
succeeds on both fronts.
 A
 Constitutionally ineffective assistance of counsel
constitutes cause sufficient to excuse a procedural default. See
Murray v. Carrier, 477 U.S. 478, 488 (1986). Demonstrating such
ineffectiveness requires a showing "that counsel's performance was
deficient" and "that the deficient performance prejudiced the
defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). 
Although a reviewing court must consider the whole of the record,
a single, serious error nonetheless can support a claim of
ineffective assistance of counsel. See Carrier, 477 U.S. at 496;
Kimmelman v. Morrison, 477 U.S. 365, 383 (1986); United States v.
Cronic, 466 U.S. 648, 657 n.20 (1984).
 In this case, the relevant error is the failure to object
to an impuissant filing, resulting in the imposition of a sentence
not authorized by law. We start with the usual presumption that
counsel was competent. See Strickland, 466 U.S. at 689. To rebut
the presumption, the petitioner must show that his attorney's
representation was objectively unreasonable under prevailing
professional norms and cannot be reconciled with sound strategy. 
See id. at 688-91. We believe that the petitioner has made the
requisite showing.
 Section 851(a)(1) straightforwardly declares that no drug
offender shall be exposed to an automatic increase in punishment by
reason of a prior conviction unless the government, before trial,
files an information with the court identifying the conviction(s)
upon which it relies. At the time the petitioner's case went
forward, it was well-settled (as the government concedes) that
"trial," as that term is used in section 851(a)(1), includes jury
selection. See United States v. Rice, 43 F.3d 601, 604 (11th Cir.
1995); Kelly, 29 F.3d at 1110; United States v. Gonzalez-Lerma, 14
F.3d 1479, 1484 (10th Cir. 1994); United States v. White, 980 F.2d
836, 840-42 (2d Cir. 1992); Johnson, 944 F.2d at 406-07; United
States v. Jordan, 810 F.2d 262, 268-69 (D.C. Cir. 1987); see also
United States v. Cartagena-Carrasquillo, 70 F.3d 706, 715 (1st Cir.
1995) (holding to like effect shortly after Prou was sentenced). 
From the face of the docket, it is evident that the government
filed the section 851(a)(1) information nineteen days after Judge
Pettine empaneled the jury. Thus, the government's blunder was 
manifest.
 In the ordinary course, the petitioner's attorney should
have called attention to this bevue at or before the disposition
hearing. At that point, there was absolutely no downside to taking
the government to task for its timing error: jeopardy had
attached, the petitioner had been convicted, the guideline
sentencing range had been computed and its high point was well
below ten years, and a timely information was a sine qua non to the
applicability of a ten-year mandatory minimum sentence. In short,
the petitioner had much to gain, and nothing to lose, by raising
the section 851(a)(1) defect before sentencing (or on direct
appeal, for that matter). There was simply no plausible reason not
to do so.
 We readily concede that not every lawyerly slip
constitutes ineffective assistance of counsel for Sixth Amendment
purposes. See Strickland, 466 U.S. at 693. After all, the
Constitution entitles a defendant to generally proficient
representation, not perfect representation. See Scarpa, 38 F.3d at
8. Withal, courts have not hesitated in finding ineffective
assistance of counsel based upon isolated but important errors. 
See, e.g., Mason v. Hanks, 97 F.3d 887, 891-902 (7th Cir. 1996);
United States v. Cook, 45 F.3d 388, 395 (10th Cir. 1995); Jackson
v. Herring, 42 F.3d 1350, 1358-62 (11th Cir. 1995); Mayo v.
Henderson, 13 F.3d 528, 533-36 (2d Cir. 1994); Gray v. Lynn, 6 F.3d
265, 268-71 (5th Cir. 1993); Dawan v. Lockhart, 980 F.2d 470, 473-
75 (8th Cir. 1992); see also 2 James S. Liebman & Randy Hertz,
Federal Habeas Corpus Procedure and Practice 26.3b, at 1102 n.37
(3d ed. 1998) (collecting cases).
 In this instance, counsel's failure to call the court's
attention to the late filing was no mere garden-variety blunder. 
Where, as here, an attorney fails to raise an important, obvious
defense without any imaginable strategic or tactical reason for the
omission, his performance falls below the standard of proficient
representation that the Constitution demands. See Cook, 45 F.3d at
395; United States v. De la Fuente, 8 F.3d 1333, 1337 (9th Cir.
1993). In other words, because the section 851(a)(1) claim was a
clear winner and presenting it would have risked nothing, counsel's
eschewal of it amounted to constitutionally deficient performance.
 B
 We turn next to the matter of prejudice, which in this
context means "a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been
different." Strickland, 466 U.S. at 494. For this purpose, "[a]
reasonable probability is a probability sufficient to undermine
confidence in the outcome," id., but "a defendant need not show
that counsel's deficient conduct more likely than not altered the
outcome in the case," id. at 493. Until very recently, courts and
commentators expressed some uncertainty as to whether "prejudice"
within the contemplation of Frady differed somehow from "prejudice"
within the contemplation of Strickland. See, e.g., Freeman v.
Lane, 962 F.2d 1252, 1259 n.5 (7th Cir. 1992); 2 Liebman & Hertz,
supra, 26.3c, at 1108-12; John C. Jeffries, Jr. & William J.
Stuntz, Ineffective Assistance and Procedural Default in Federal
Habeas Corpus, 57 U. Chi. L. Rev. 679, 684 & n.25 (1990).
 Earlier this year, the Court stated that in order to show
prejudice sufficient to overcome a procedural default, a habeas
petitioner "must convince us that there is a reasonable probability
that the result of the trial would have been different" absent the
error. Strickler v. Greene, 119 S. Ct. 1936, 1952 (1999) (citation
and internal quotation marks omitted). "'The question is not
whether the defendant would more likely than not have received a
different verdict with the [wrongfully withheld] evidence, but
whether in its absence he received a fair trial, understood as a
trial resulting in a verdict worthy of confidence.'" Id. (quoting
Kyles v. Whitley, 514 U.S. 419, 434 (1995)). This language mimics
the Strickland formulation quoted above. Given the striking
linguistic parallel, we conclude that the Frady and Strickland
prejudice standards are one and the same. This accords with both
the pre-Strickler practice of most courts of appeals, see 28 James
Wm. Moore et al., Moore's Federal Practice 671.11[2][b], at 671-
184 to -185 & n.48 (3d ed. 1999) (collecting cases), and the pre-
Strickler view of many commentators, see, e.g., Erwin Chemerinsky,
Federal Jurisdiction 15.5.2, at 830 (2d ed. 1994); Wayne R.
LaFave & Jerold H. Israel, Criminal Procedure 28.4(f), at 1218
(2d ed. 1992); 28 Moore et al., supra, 671.11[2][b], at 671-184
to -185.
 Having constructed the template, the prejudice inquiry
need not detain us here. Had the petitioner's court-appointed
attorney called attention to the obvious defect in the government's
section 851(a)(1) information, the district court would not have
had recourse to a ten-year mandatory minimum sentence. The
subsequent imposition of such a sentence is prejudice, pure and
simple. See Kelly, 29 F.3d at 1112 (dictum); Suveges, 7 F.3d at
10 (dictum); Hardy, 691 F.2d at 41.
 V
 In this case, the government's section 851(a)(1) filing
was late and, prior to jury selection, it furnished neither the
petitioner nor the court an equivalent signal of its intent to seek
a statutory sentence enhancement. The failure to raise this point
constituted substandard performance on counsel's part, resulting in
an incarcerative sentence that not only exceeded the court's
authority but also surpassed the apex of the applicable guideline
sentencing range by almost two years.
 We need go no further. In light of the foregoing, we
reverse the order of dismissal, vacate the sentence previously
imposed on the drug-trafficking counts (counts I and II), and
remand for resentencing without the statutory enhancement. The
petitioner has not contested the five-year consecutive sentence
imposed on the firearms count (count III), and that portion of his
sentence is not affected by this decision.

Reversed and remanded.