USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1987 UNITED STATES, Appellant, v. MICHAEL R. SPECTOR, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Joseph A. DiClerico, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and John R. Gibson,* Senior Circuit Judge. ____________________ ____________________ Peter E. Papps, First Assistant United States Attorney, with whom ______________ Paul M . Gagnon, United States Attorney, was on brief for appellant. _______________ Douglas J. Miller, with whom Hall, Morse, Anderson, Miller & __________________ __________________________________ Spinella, P.C. was on brief for appellee. ______________ ____________________ May 26, 1995 ____________________  ____________________ *Of the Eighth Circuit, sitting by designation. CAMPBELL, Senior Circuit Judge. In the early ______________________ 1990s, the U.S. Department of Labor began an investigation of defendant Michael Spector and of David Murray and Bernard Mintz, suspecting them of having submitted false statements in connection with an employee benefit plan. The government notified counsel for all three men that it was conducting the investigation and that it intended to charge the three with criminal violations of 18 U.S.C. 1027 (1988) (ERISA) and 18 U.S.C. 644 (1988). Among the violations under investigation were a false statement allegedly submitted to the department on January 20, 1988, and an act of embezzlement allegedly occurring on February 19, 1988. Since the violations were subject to a five-year statute of limitations, 18 U.S.C. 3282 (1988), the limitations periods for the two violations above were to expire on January 20, and February 19, 1993, respectively. On January 15, 1993, defendant Spector and the two others (whom we shall collectively call "defendants," although this appeal relates to Spector only) asked the government to delay seeking an indictment in order to give them more time to investigate and additional opportunity to persuade the government to modify its position on certain issues. The defendants entered into a written agreement with the government, under which the government agreed not to file an information or to seek an indictment before February 26, -2- 2 1993, in exchange for the defendants' agreement to waive a statute of limitations defense for charges brought on or before March 5, 1993 (thereby effectively extending the limitations period until March 5). The agreement provided that it would be effective "upon execution by all parties," and was in fact signed by all parties. The agreement went on to state "that further extensions of this agreement may be agreed to subsequently, but only by a further writing signed by all parties." As the new March 5 deadline approached, defendants again sought to extend the period before the government brought an indictment. Defendants executed another written agreement on March 5. Under the terms of the second agreement, the government stated that it had not yet brought an indictment against defendants and would forebear from doing so until April 9, 1993. In exchange, the defendants agreed to extend the limitations period until April 16, 1993. Like the first agreement, the second agreement provided that it would be effective "upon execution by Murray, Spector and Mintz, and their respective counsel and the United States by its counsel." However, unlike the first agreement, this second agreement, though signed by defendants and their counsel, was not signed by counsel for the government. On April 16, 1993, the grand jury returned an initial twenty-seven count indictment against defendants. On -3- 3 September 1, 1993, the grand jury returned a seven count superseding indictment. Nearly a year later, on August 15, 1994, Spector moved to dismiss the two counts of the indictment that were based on the false statement and embezzlement described above. Spector argued that the second extension of the statute of limitations was not binding, since it was not signed by the government. Without the extension provided by the second agreement, Spector argued, the two counts were barred by the statute of limitations, as they were handed down after March 5, 1993, the deadline set by the first extension. The district court agreed and dismissed the two counts as time-barred. Although it found the first extension to be binding, the district court determined that the second extension was ineffective, having been an offer that explicitly required the government's signature for acceptance, and not permitting alternative forms of acceptance. The court rejected the government's contention that an oral agreement existed, holding that such an agreement would be contrary to the plain terms of the written agreements. The district court also rejected the government's argument based upon promissory estoppel, finding that any reliance by the government on the second extension was unreasonable, given that the first extension expressly provided that any additional extensions had to be in writing -4- 4 and signed by all parties. The government now appeals, pursuant to 18 U.S.C. 3731 (1988). A statute of limitations defense is a waivable affirmative defense, not a jurisdictional bar to prosecution. See Acevedo-Ramos v. United States, 961 F.2d 305, 307 (1st ___ _____________ _____________ Cir.), cert. denied, 113 S. Ct. 299 (1992). Failure to raise ____________ the defense in a timely manner can result in its waiver, as can an unqualified guilty plea or other, similar "action[] obviously constitut[ing] a waiver of the time limitation." Id. at 309. Most relevantly for present purposes, several ___ federal courts of appeals have held that an individual under investigation may, in order to delay indictment, expressly waive a statute of limitations defense prior to trial, indeed prior to indictment, so long as that waiver is made knowingly and voluntarily. See, e.g., United States v. Wild, 551 F.2d ___ ____ _____________ ____ 418, 422-24 (D.C. Cir.), cert. denied, 431 U.S. 916 (1977).1 ____________ In these cases, like the present, the defendant has typically entered into a written waiver in exchange for the government's agreement not to indict before a certain time, in hopes that further discussion may result in a more favorable disposition or prevent an indictment altogether.  ____________________ 1. See also United States v. Del Percio, 870 F.2d 1090, _________ ______________ __________ 1093-94 (6th Cir. 1989); United States v. Meeker, 701 F.2d ______________ ______ 685, 687-88 (7th Cir.), cert. denied, 464 U.S. 826 (1983). ____________ See generally Case Comment, Waiver of the Statute of ______________ ____________________________ Limitations in Criminal Prosecutions: United States v. Wild, ____________________________________________________________ 90 Harv. L. Rev. 1550, 1555 (1977). -5- 5 The courts have enforced such agreements where voluntarily and knowingly made, finding that they do not violate the policies underlying the statute of limitations. The issue in this appeal is whether the district court erred in holding that, because of the government's failure to sign, the second agreement was not an effective waiver of defendant's rights under the statute of limitations. It is undisputed that if the second agreement is found binding, the defendant may not assert his statute of limitations defense. If not, however, both parties agree that the defendant may assert the defense and that the two counts of the indictment were properly dismissed as time- barred, since they were handed down after the deadline set by the first agreement. Reviewing the district court's decision on this issue of law de novo, Thrifty Rent-A-Car ________ ___________________ System, Inc. v. Thrifty Cars, Inc., 831 F.2d 1177, 1181 (1st _____________ __________________ Cir. 1987), we sustain the district court's holding that the second agreement was ineffective and did not constitute a waiver of the defendant's statute of limitations defense. The two agreements carefully and explicitly set forth the conditions under which the extensions of the limitations period would become effective. The first extension would become effective "upon execution by all parties;" the second extension would become effective "upon execution by Murray, Spector, and Mintz, and their respective counsel and the -6- 6 United States by its counsel." The agreements go so far as to specify that acceptance by one of the defendants would be made by fax. Both agreements limited the extensions to definite time periods. Further extensions of the limitations period were permissible, "but only by a further writing signed by all parties." One obvious reason for spelling out these requirements in such detail was to remove all doubt as to the exact steps by which defendants' partial waiver of rights and the government's agreement to forbear would become effective. Creating such a road map told both parties precisely what each had to do and what each would receive in exchange, thus minimizing the risk (or so it might be hoped) of a future dispute over the consummation and meaning of the agreement. Unfortunately, the government failed to meet the explicit condition provided to effectuate the second extension: it failed to sign the document. Thus, by the plain terms of the second agreement, the extension was not effective. Where the parties have so deliberately set forth in writing the conditions necessary to make their agreement effective, we think it inadvisable for a court to condone deviation from one of the explicit terms, absent some good reason to do so. We find unpersuasive the government's argument that contract or estoppel principles warrant enforcement of the agreement, despite the government's failure to comply with -7- 7 its plain language. We assume that principles of contract or estoppel may sometimes be useful in analyzing agreements like this, cf. United States v. Baldacchino, 762 F.2d 170, 179 ___ _____________ ___________ (1st Cir. 1985) ("Though a matter of criminal jurisprudence, plea bargains are subject to contract law principles insofar as their application will insure the defendant what is reasonably due him."). But those principles do not help the government here.2 The second agreement expressly called for acceptance of the offer in the form of a signature by the government attorney. It did not provide for any other form of acceptance, whether orally3 or through performance. See ___ Restatement (Second) of Contracts 30 (1979). The defendant was entitled not merely to forbearance from indictment, which he received, but to have the government's binding promise to _______ forbear from indicting him, which he did not receive. That promise provided reassurance and certainty that he would not be indicted prior to the time period set forth in the  ____________________ 2. As in United States v. Papaleo, 853 F.2d 16, 19 n.3 (1st _____________ _______ Cir. 1985), we need not attempt to decide whether, when and to what degree local contract law is or may strictly be applicable to such agreements, since the result here would be the same regardless.  3. The government argues that Spector's alleged failure to request a signed copy of the agreement reflects his understanding that an agreement existed. But this is pure speculation. Just as the record is devoid of any suggestion that the defendant sought return of a signed copy of the contract, it is also devoid of any suggestion that the government ever informed the defendant that it accepted the terms of the agreement and was going to forbear from indicting him. -8- 8 agreement. The government's estoppel argument is similarly without merit. The government could not reasonably have relied upon the defendant's offer to extend the statute of limitations a second time, in the face of the express language in the second agreement conditioning the waiver on the signature of all parties and the express language in the first agreement allowing extensions only in writing and signed by all parties. The government has provided no evidence of any other statements or conduct by the defendant that could provide a separate basis for an estoppel. Accordingly, the second agreement, by its terms, was not effective and the defendant was entitled to assert his statute of limitations defense. The district court properly dismissed the two counts of the indictment as untimely. We recognize that the government's failure to sign the agreement was likely the result of some unintended clerical error. Nevertheless, where the government reaches an agreement with a potential criminal defendant, and where both parties expressly establish, in writing,4 the terms of  ____________________ 4. We emphasize that we are not saying that, to be enforced, an agreement to extend the statute of limitations must be made in writing, or must be signed by the government. See, e.g., United States v. Doyle, 348 F.2d 715, 718-19 (2d ___ ____ _____________ _____ Cir.) (suggesting that an implicit agreement may be sufficient to waive the statute of limitations defense), cert. denied, 382 U.S. 843 (1965). We say only that, where ____________ _____ the parties themselves have chosen to set forth the terms in _____________________________________________________________ writing, it makes sense to hold them to those terms, absent _______ good reason to do otherwise. -9- 9 their bargain and map out the conditions under which it will be effective, we think the parties are best held to the plain terms of that agreement, absent some good reason to depart.5 That policy is more likely to increase rather than diminish the utility of such agreements. Were we to accept too lightly deviations from the explicit language, we would undermine the certainty the parties hope to achieve. See ___ also Correale v. United States, 479 F.2d 944, 947 (1st Cir. ____ ________ ______________ 1979) ("[T]he most meticulous standards of both promise and performance must be met by prosecutors engaging in plea bargaining.") The latter is particularly true where, as here, the government subsequently seeks specific performance of the defendant's agreement to waive a defense. Affirmed. ________   ____________________ 5. We do not see our opinion as making agreements like this so difficult to enforce as to cause the government to become reluctant to enter into them, thereby possibly harming defendants seeking to postpone an imminent indictment. To the contrary, we are signaling that agreements like this will be enforced as written, giving the parties more rather than less control over the situation. All the government had to do to protect itself in this case was to sign the form in accordance with the agreed-upon terms. -10- 10