**UNITED STATES of America,**

v.

**George L. UPTON and Lynn Alberico, Defendants**

**No. CRIM. 02–10243–PBS.**

United States District Court, D. Massachusetts.

Oct. 5, 2004.

Michael J. Pelgro, United States Attorney's Office, Susan M. Poswistilo, United States Attorney's Office, John A. Wortmann, Jr., United States Attorney's Office, Boston, MA, for Plaintiff.

Ronald J. Chisholm, Winchester, MA, Michael Kendall, McDermott, Will & Emery, Wayne R. Murphy, Murphy & Flaherty, Scott E. Murray, McDermott, Will & Emery LLP, Boston, MA, Frederick C. Mycock, Zevitas & Enright, PC, Barnstable, MA, for Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

## I. INTRODUCTION

Defendants are charged with structuring transactions to avoid reporting requirements imposed on domestic financial institutions (Count II), conspiracy (Counts I and IV), money laundering (Count III), and several tax violations (Counts V–VIII). They move to dismiss Counts I–III [1] of the second superseding indictment as barred by the statute of limitations, the Speedy Trial Act (18 U.S.C. §§ 3161), and the right to a speedy trial under the Sixth Amendment. The Defendant's Motion to Dismiss (Docket No. 66) is *ALLOWED.*

## II. FACTUAL BACKGROUND

Defendants George Upton and Lynn Alberico have been the targets of an extensive grand jury investigation over several years beginning on November 29, 2001. (Pelgro Aff. ¶¶ 3, 25–26.) On August 22, 2002, a grand jury returned an indictment as to Defendants on charges of conspiracy, money laundering, and structuring transactions for the purpose of evading currency transaction reporting requirements. The indictment charged that between August 27, 1997 and August 29, 1997, defendants engaged in unlawful structuring transactions (Superseding Indictment ¶ 8). The indictment was thus returned only one week before the five-year statute of limitations would have run. The United States moved to seal the indictment pending the arrest of the Defendants and stated that it needed to conduct an investigation into other federal offenses, which would "not be concluded for at least three more months," and that failure to seal "might lead to the flight of the defendants or possible efforts to influence or intimidate federal witnesses." The motion to seal was allowed.

Eight months later, on April 30, 2003, the United States moved to continue to seal the indictment for at least three more months. The Government cited "certain obstacles that have caused the unsealing of the indictment to be delayed," including the postponement of one witness's appearance before the grand jury until May because of the birth of a child in March, and the expiration in March 2003 of the grand jury that had been hearing the matter.

This Court allowed continuation of the seal for thirty days and required the Government to file a detailed status report if it

1. In fact, Defendants moved to dismiss Counts I–V of the Indictment. Since the filing of Defendants' motion on July 21, 2004, however, a grand jury has returned a superseding indictment against the Defendants in which the counts charged were altered. (Docket No. 100.) Counts I–III of the current superseding indictment correlate with Counts I–V of the previous indictment.

sought any further extension. The Court ruled: "Allowed for thirty days. Why is this taking so long? What efforts have been made to arrest defendants? I want a detailed status report if an additional extension is sought." (Electronic Margin Order of 5/3/2003.) The Defendants were arrested on November 6, 2003. During the intervening six months, the Government neither provided this Court with a status report nor requested continuation of the seal. Although the authorized seal had expired, as a practical matter, the indictment remained sealed in the clerk's office.

On May 12, 2004, the grand jury returned a superseding indictment against the Defendants. It included the five counts from the original indictment as well as five new conspiracy and tax-related charges. (Docket No. 50.) On July 21, 2004, Defendants moved to dismiss the original five counts as barred by the statute of limitations, the Speedy Trial Act, and the Sixth Amendment. On September 15, 2004, the grand jury returned a second superseding indictment against the Defendants (Docket No. 100). It included two counts of conspiracy (Counts I and IV), one count of structuring transactions to avoid reporting requirements imposed on domestic financial institutions (Count II), one count of money laundering (Count III), and several tax-related counts (Counts V–VIII). Defendants moved to dismiss Counts I–V of the first superseding indictment; these correlate with Counts I–III of the second superseding indictment.

### III. DISCUSSION

A. *Legal Framework*

Defendants argue that Counts I–III are barred by the five-year statute of limitations set forth in 18 U.S.C. § 3282. They argue that the indictment was improperly sealed, and that even if the original sealing was proper, the seal became improper after June 2003, due to the Government's failure to follow an order of this Court.

The applicable statute of limitations provides that "[e]xcept as otherwise provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is *found* or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282 (emphasis added).

An indictment may be sealed under Fed. R.Crim.P. 6(e)(4), which states: "The magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. The clerk must then seal the indictment, and no person may disclose the indictment's existence except as necessary to issue or execute a warrant or summons."

Many courts have held that if an indictment is properly returned and sealed before the expiration of the statute of limitations, it is considered "found" on the date of return to the magistrate, not on the date of unsealing, even if the latter date is past the limitations period. *See, e.g., United States v. Srulowitz*, 819 F.2d 37, 40 (2nd Cir.1987) ("Where the prosecution can demonstrate that the decision to keep an indictment secret is informed by the exercise of sound discretion in the public interest, the date of return, rather than the date of unsealing, will establish the time the indictment is 'found'.") (citations omitted); *United States v. Bracy*, 67 F.3d 1421, 1426 (9th Cir.1995) (holding that the statute of limitations is tolled if the indictment is properly sealed); *United States v. Lakin*, 875 F.2d 168, 170 (8th Cir. 1989)("When an indictment is properly sealed, the date of return, rather than the date of unsealing, ordinarily is the time

that the indictment is found for purposes of section 3282."); *United States v. Sharpe,* 995 F.2d 49, 52 (5th Cir.1993) (per curiam); *United States v. Maling,* 737 F.Supp. 684, 693 (D.Mass.1990)("For the purposes of the statute of limitations, a properly sealed indictment is found on the date of return to the magistrate, not on the date of the unsealing."), *affirmed by United States v. Richard,* 943 F.2d 115 (1st Cir.1991). *But see United States v. Thompson,* 287 F.3d 1244, 1251 (10th Cir. 2002) (concluding that "an indictment is 'found' under 18 U.S.C. § 3282 when the grand jury votes to indict the defendant and the foreperson subscribes the indictment as a true bill. Whether the indictment is then sealed is irrelevant for statute of limitations purposes.")

■ The converse of this analysis dictates that an improperly sealed indictment does not toll the statute of limitations. *See, e.g., United States v. Cosolito,* 488 F.Supp. 531, 537 (D.Mass.1980) (finding no tolling of statute of limitations where there was "no factual basis for sealing the indictment"); *United States v. Maroun,* 699 F.Supp. 5, 7 (D.Mass.1988) (finding no tolling of statute of limitations where the government made an implicit false representation in requesting sealing of indictment).

■ A magistrate may grant a request to seal an indictment " 'for any legitimate prosecutorial objective or where the public interest otherwise requires it.' " *United States v. Balsam,* 203 F.3d 72, 81 (1st Cir.2000)(quoting *Richard,* 943 F.2d at 118). Rule 6(e)(4) presumes a governmental objective of preventing pre-arrest flight by the defendant, *Balsam,* 203 F.3d at 81, but the First Circuit has suggested that other objectives, including protection of witnesses and gathering of further evidence, may also be legitimate. *Id.* at 81 ("The protection of a key prosecution witness undoubtedly qualifies as a legitimate

prosecutorial objective."); *Id.* at 81 n. 9 ("[T]he government's decision to seal an indictment in order to gather further evidence against a defendant has been held to constitute a legitimate prosecutorial objective under Rule 6(e)."). Any delay in unsealing cannot be pre-textual or unreasonable. *Id.* at 81. *See generally,* 9 Federal Procedure, Lawyer's Edition § 22:778 (pointing out that "the government may not seal an indictment for more than a reasonable time after the statute of limitations has expired, when the defendants are available.")

## B. *Propriety of Initial Sealing*

■ Defendants argue that the indictment was improperly sealed in this case because the Government misled the Court in claiming that the Defendants posed a flight risk. They suggest that sealing the indictment could not have affected the risk of flight because the Defendants knew they were targets of a grand jury investigation at the time of the sealing request and the Government was well aware of the Defendants' whereabouts in Massachusetts. At the time of the request for seal, however, the Government was aware that Defendant George Upton had been selling his real estate holdings and had recently sold his business, "Look Motors". (Pelgro Aff. ¶ 39.) These actions, as well as Upton's prior probation violations and charges for being a fugitive from justice and failure to appear in court (Pelgro Aff. ¶ 12) suggested the possibility of flight. Even if the Defendants were aware of the grand jury investigation, the Government's suggestion that sealing the indictment would lessen the risk of flight under these circumstances was not unreasonable. In addition, based on testimony by witnesses before the grand jury, the Government reasonably believed that Upton, a suspect in a homicide investigation, might attempt

to intimidate witnesses. One witness testified that Defendant Alberico had said that she wanted protection from Upton because Upton had attempted to intimidate her. (Pelgro Aff. ¶ 32.) Another witness testified that Upton had driven her from Cape Cod to Boston when she testified before the grand jury and had waited for her while she testified. (Pelgro Aff. ¶ 35.) Although that witness has stated that Upton did not attempt to influence her testimony (Webb Aff. ¶ 6), the Government was reasonably concerned about the possibility of witness tampering. Thus, the original sealing of the indictment was proper.

## C. Failure to Comply with Court Order

Defendants argue that even if the indictment was properly sealed in August 2002, the seal became invalid after June 3, 2003 due to the Government's failure to abide by an express order of this Court. On May 3, 2003, this Court allowed the Government's motion to continue seal of the indictment, but restricted that allowance to thirty days. The Court specified that if the Government wanted to file for a further continuance, it would have to provide a detailed status report. When the Government failed either to file a status report or to request a continuance long after the thirty days had passed, the authority to seal the indictment expired, and the statute of limitations again began to run.

Where the government is required to take certain steps for the statute of limitations to be tolled, tolling may be disallowed if those requirements are not strictly fulfilled. Cf. United States v. Spector, 55 F.3d 22, 26 (1st Cir.1995) (holding that statute of limitations would not be tolled where counsel for the government inadvertently failed to sign a tolling agreement, because allowing such deviations from the language of the tolling agreement

would "undermine the certainty the parties hope to achieve.") The Assistant United States Attorney ("AUSA") working on the case, Michael J. Pelgro, states that he was heavily involved with several other time-consuming cases during the period of delay in this case, and "[a]s a result of this workload, I inadvertently allowed to slip my responsibility to provide the Court with the status report requested in its endorsement." (Pelgro Aff. ¶ 46.) Susan M. Poswistilo, another AUSA working on the case, also describes her extremely busy schedule during the relevant period. (Poswistilo Aff. ¶¶ 5–6.) The fact that the delay in unsealing the indictment was unintentional does not, however, affect this Court's ruling. In Spector, the First Circuit did not overlook the government's mistake even though it was "likely the result of some unintended clerical error." 55 F.3d at 26.

Moreover, the Government has not shown that the additional delay after April 2002 was reasonable. Delay in unsealing the indictment is unreasonable if there is "no legitimate prosecutorial need for it." United States v. Deglomini, 111 F.Supp.2d 198, 203 (E.D.N.Y.2000) (quoting United States v. Watson, 599 F.2d 1149, 1156 n. 4 (2d Cir.1979)). Here, the witness who had the baby (Upton's daughter) testified on June 11, 2003, but she took the Fifth Amendment. Through the end of May, 2003 the Government presented to a new grand jury a summary of the evidence presented to the first grand jury (Pelgro Aff. ¶ 43). Although the Government also states that it presented new witnesses in September, and had to present paperwork to procure these witnesses, there is no evidence to explain the delay in arresting defendants until November. The Government vaguely attributes the delay to the workload of the AUSAs and a slow approval process at the Department of Justice.

196

At most, I conclude a delay until September would have been reasonable. To allow the Government to extend the statute of limitations in the circumstances of this case would undermine the role which statutes of limitations have traditionally served. *See United States v. O'Bryant*, 998 F.2d 21, 24 (1st Cir.1993) (finding that statutes of limitation are "designed 'to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment of acts in the far-distant past.'") (quoting *Toussie v. United States*, 397 U.S. 112, 114–15, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970)). Even if asked, I would not have allowed the additional delay because there was no legitimate prosecutorial reason for such a long sealing period.

 The United States argues that the Defendants must show substantial prejudice to justify dismissal because the indictment was properly sealed in the first instance. It is true that a defendant moving to dismiss a properly sealed indictment on the basis of the statute of limitations must show "substantial, irreparable, actual prejudice." *Richard*, 943 F.2d at 119 (quoting *United States v. Edwards*, 777 F.2d 644, 649 (11th Cir.1985)); *see generally* Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Crim.3d § 110 at 472 (1999) ("An indictment returned in open court before the statute of limitations has run is valid even though it is then sealed and kept secret until after the period of limitations has expired. Only if a defendant can show substantial actual prejudice in the period between the sealing of the indictment and its unsealing is dismissal of the indictment required on this ground."). Furthermore, if the government's original objective in requesting a sealing order is legitimate, it need not

return to the magistrate simply because the reason for sealing the indictment changes. *Balsam*, 203 F.3d at 81.

Here, however, the Government did return to court for an extension, and then failed to abide by its terms. Thus, no prejudice need be shown in this case because the seal of the indictment was no longer in effect and the statute of limitations was no longer tolled when the thirty-day period ended without further Government action. The limitations period on Counts I–III of the indictment passed, and those charges must be dismissed.

D. *Speedy Trial Act and Sixth Amendment Speedy Trial Right*

Because the statute of limitations bars Counts I–III of the indictment, the Speedy Trial Act and Sixth Amendment issues raised by the Defendants need not be addressed by this Court.

## ORDER

The motion to dismiss is *ALLOWED*.