**UNITED STATES of America**

v.

**George L. UPTON, Defendants.**

**Crim. No. 02–10243–PBS.**

United States District Court,
D. Massachusetts.

Jan. 4, 2005.

Andrew D. Berman, Simonds, Winslow, Willis & Abbott, Boston, MA, for Hyatt Corp., Defendant.

Brian F. Breen, Boyle, Morrissey & Campo, P.C., Boston, MA, for Hyatt Corp., Defendant.

Anthony M. Campo, Boyle, Morrissey & Campo, P.C., Boston, MA, for Hyatt Corp., Defendant.

**94**

Brett J. Harpster, Boyle, Morrissey & Campo, P.C., Boston, MA, for Hyatt Corp., Defendant.

Brian B. Kydd, Kneeland & Kydd, Arlington Heights, MA, for Hyatt International, Inc., Defendant.

Mark William Shaughnessy, Boyle, Morrissey & Campo, PC, Boston, MA, for Hyatt Corp., Defendant.

Jon Stetkis, Stetkis Sperco Law Offices, West Dennis, MA, for Mitchell Vainshtein, Hyatt Cancun Caribe, Hyatt Corp., Hyatt International, Inc., Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### I. INTRODUCTION

On October 20, 2004, after a jury trial, defendant George Upton was convicted of conspiracy to commit money laundering, failure to file a tax return, and filing a false tax return. Following this verdict, the jury found certain of defendant's property forfeitable to the government. The defendant now moves for acquittal on the conspiracy charge and the failure to file a tax return charge. He also challenges the forfeiture findings.

After hearing, defendant's motion for acquittal is **DENIED**. Defendant's motion to vacate the jury's forfeiture findings is also **DENIED**.

### II. FACTUAL BACKGROUND

Defendants George Upton and Lynn Alberico were indicted on August 22, 2002 on five counts of conspiracy, money laundering, and structuring currency transactions to evade reporting requirements for domestic financial institutions. These charges were based on allegations that in July 1997, the defendants stole approximately $900,000 from Steven Queen, who allegedly had taken this money without authority from his parents in Florida and driven it to Massachusetts, and that the defendants then engaged in various financial transactions to conceal the source of the money.

On May 12, 2004, the grand jury returned a superseding indictment, which included the original charges as well as five new counts based on conspiracy to commit money laundering and tax-related charges. A second superseding indictment including the same basic charges was returned on September 15, 2004.

On October 5, 2004, this Court dismissed Counts I–III of the second superseding indictment, consisting of one count of conspiracy, one count of structuring transactions to avoid reporting requirements, and one count of money laundering. *United States v. Upton,* 339 F.Supp.2d 190 (D.Mass.2004). These three counts corresponded to the five counts from the original August 2002 indictment. The Court held that the charges were barred by the applicable five-year statute of limitations, because the sealing of the indictment, which had tolled the statute of limitations, lapsed. *Id.* at 196.

Upton's trial on the remaining charges—conspiracy to commit money laundering under 18 U.S.C. § 1956(h), making and subscribing a false federal tax return in July 2000 that failed to declare the receipt of illegal income in the 1997 tax year, and failure to file before April 15, 2000 an individual tax return for the tax year 1999—was held in October 2004. On October 18, the day before both parties rested, Upton moved for judgment of acquittal on the conspiracy to commit money laundering count. *See* Fed.R.Crim.P. 29(a) ("After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.") He argued, first, that the conspiracy charge was barred by the statute of limitations and,

second, that the government had failed to prove that interstate transportation of stolen property had occurred in the case, as required under the relevant statute. During the charge conference the day before, defense counsel had not requested jury instructions on the statute of limitations issue, and he never submitted written instructions on that point either. On October 19, this Court denied the motion, and charged the jury. The jury returned a verdict of guilty on all counts on the following day.

Upton now renews his motion for judgment of acquittal. *See* Fed.R.Crim.P. 29(c)(1) ("A defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later, or within any other time the court sets during the 7–day period.") Upton incorporates the arguments for acquittal on the conspiracy charge from the motion of October 18, and also argues that the government has failed to demonstrate the required nexus between interstate commerce and money laundering in this case. In addition, Upton moves for acquittal as to failure to file a tax return for 1999, based on insufficiency of evidence. Finally, Upton moves to vacate the jury's forfeiture findings.

## III. DISCUSSION

### A. *Legal Standard*

■ Under Rule 29, "[a] judgment of acquittal should only be granted when the evidence and all reasonable inferences to be drawn from the evidence, both taken in the light most favorable to the govern-ment, are insufficient for a rational factfinder to conclude that the prosecution has proven, beyond a reasonable doubt, each of the elements of the offense." *United States v. Pimental,* 380 F.3d 575, 583 (1st Cir.2004) (citing *United States v. Moran,* 312 F.3d 480, 487 (1st Cir.2002); *United States v. Campbell,* 268 F.3d 1, 6 (1st Cir.2001)).

### B. *Statute of Limitations*

Upton moves for acquittal on conspiracy to commit money laundering on the ground that the charged conspiracy did not continue to exist as of May 12, 1999—five years before the return of the superseding indictment. *See* 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.") He argues that the conspiracy was completed by January 1999, when the defendants sold the 89 Iyanough Road property that the government alleged had been purchased with the stolen money.

The indictment alleged, however, that defendants' failure to file income tax returns for the tax year 1999 as well as Upton's filing of a false 1997 federal income tax return in July 2000 were part of the conspiracy, because both were meant to conceal the ownership and control of the illegal proceeds. Upton argues that these activities do not bring the conspiracy count within the statute of limitations because they were not in furtherance of the charged conspiracy.[1]

---

1. This Court did not instruct the jury as to an overt act requirement on the conspiracy charge. The Supreme Court recently granted certiorari on the issue of whether a conviction for conspiracy to commit money laundering under 18 U.S.C. § 1956(h) requires proof of an overt act. *Hall v. United States,* —— U.S. ——, 124 S.Ct. 2872, 159 L.Ed.2d 775 (2004). § 1956(h) does not expressly require proof of an overt act, and the language of § 1956(h) is nearly identical to that of the drug conspiracy statute, 21 U.S.C. § 846, as to which the Supreme Court has explicitly held that no overt act requirement applies. *United States*

### 1. Timeliness of Claim

█ Claiming it was sandbagged, the government argues that Upton should have presented his statute of limitations argument before trial because under Fed. R.Crim.P. 12(b), a motion alleging a defect in an indictment that can be determined on the face of the indictment must be filed prior to trial. *See* Fed.R.Crim.P. 12(b)(3) ("The following must be raised before trial:... (B) a motion alleging a defect in the indictment or information....") Because the indictment was a lengthy speaking indictment, the government contends that Upton could readily have determined from the face of the indictment the factual allegations that formed the basis of the charges. This argument is unpersuasive. The indictment was facially valid under the statute of limitations because it stated that the conspiracy continued until "in or about July 2000," less than five years before the May 2004 indictment was returned.

The First Circuit recently addressed this issue in *United States v. Thurston*, 358 F.3d 51 (1st Cir.2004), where the defendant was convicted under a statute prohibiting conspiracy or fraud against the United States. *Id.* at 62. In a Rule 29 motion after the jury verdict, the defendant argued that the statute of limitations barred the conviction because no overt act during the permissible limitations period had been proven. *Id.* The court agreed

with the government that the statute of limitations defense was raised too late, but stated that if Thurston had raised the defense during trial, rather than after the verdict, it would have been timely. *Id.* at 63. Because "the indictment adequately pled facts to establish that the crime was within the limitations period," the court stated that:

> Thurston was not required to raise the defense before trial under Rule 12(b)(3), Fed.R.Crim.P. Nor would it have made sense for him to do so, since the defense depended on what the government proved or failed to prove at trial. In a criminal case a defendant need only plead as to the accusation of guilt in the indictment and need not raise the statute of limitations as an affirmative defense before trial.

*Id.* at 62–63. The same standard applies here. The indictment in this case adequately pleaded facts necessary to fulfill the statute of limitations requirement, and Upton was therefore permitted to raise his statute of limitations argument at trial, before the jury verdict, when he had heard the entire government case. He did so, and his statute of limitations argument is thus timely.

### 2. Cover–Up

█ Actions taken to cover up a conspiracy do not automatically extend the life

---

v. *Shabani*, 513 U.S. 10, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994); *See United States v. Hall*, 349 F.3d 1320, 1323 (11th Cir.2003).

In post-*Shabani* cases, the circuits are split on the issue, and a judge of this Court has stated that no overt act requirement exists under § 1956(h). *See United States v. Astronomo*, 183 F.Supp.2d 158, 168 (D.Mass.2001) (stating that there is no overt act requirement for conspiracy to commit money laundering under § 1956(h)); *Hall*, 349 F.3d at 1323–24 (same); *United States v. Bolden*, 325 F.3d 471, 491 (4th Cir.2003) (same); *United States v. Tam*, 240 F.3d 797, 802 (9th Cir.2001) (same); *But see United States v. Wilson*, 249 F.3d 366,

379 (5th Cir.2001) (requiring proof of an overt act under § 1956(h) without discussion); *United States v. Evans*, 272 F.3d 1069, 1082 (8th Cir.2001) (same); *United States v. Navarro*, 145 F.3d 580, 593 (3d Cir.1998) (same).

Regardless, the presence or absence of an overt act requirement has no effect on the statute of limitations issue. Even if no overt act is required in this case, the government must prove that the conspiracy still existed during the statute of limitations period. *See Grunewald v. United States*, 353 U.S. 391, 396–97, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957).

of the conspiracy, although they can do so if the government demonstrates "an express original agreement among the conspirators to continue to act in concert in order to cover up" the crime. *Grunewald v. United States,* 353 U.S. 391, 402, 404, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); *See also United States v. Twitty,* 72 F.3d 228, 233 (1st Cir.1995). In *Grunewald,* the Supreme Court explicitly rejected the proposition that "the duration of a conspiracy can be indefinitely lengthened merely because the conspiracy is kept a secret ... in order to avoid detection and punishment after the central criminal purpose has been accomplished." *Grunewald,* 353 U.S. at 405, 77 S.Ct. 963. The Court noted that considering concealment efforts to be part of the central conspiracy in all cases would "wipe out the statute of limitations in conspiracy cases," since "every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces." *Id.* at 402, 77 S.Ct. 963.

■ The government produced no evidence in this case of "an express original agreement" between Upton and Alberico to continue to cover up their crime. *Id.* at 404, 77 S.Ct. 963. Even where such an express agreement is lacking, however, acts of concealment may be part of a conspiracy where they are done "in furtherance of the main criminal objectives of the conspiracy" rather than "after these central objectives have been attained, for the purpose only of covering up after the crime." *Id.* at 405, 77 S.Ct. 963. Thus, in considering whether a particular effort at concealment is part of a conspiracy for statute of limitations purposes, "the crucial question ... is the scope of the conspiratorial agreement." *Id.* at 397, 77 S.Ct. 963. In *Grunewald,* two firms, hoping to avoid charges for tax evasion, paid the defendants to obtain "no prosecution" rulings in the firms' cases. *Id.* at 395. Defendants later attempted to conceal their original activities by doctoring government reports

and covering up traces of fees paid. *Id.* at 395–96, 77 S.Ct. 963. The Court held that the central objective of the conspiracy had been the securing of the "no prosecution" rulings and that, for purposes of the statute of limitations, the later attempts at concealment, even though alleged in the indictment, were not central elements of the conspiracy. *Id.* at 406, 77 S.Ct. 963.

The Court in *Grunewald* noted that there are certain crimes for which the scope of the conspiratorial agreement must include acts of concealment, because "the successful accomplishment of the crime necessitates concealment." *Id.* at 405, 77 S.Ct. 963. For example, "repainting a stolen car would be in furtherance of a conspiracy to steal." *Id.* The Fifth Circuit expanded on this point, holding that "acts of concealment are 'part of the central conspiracy itself' where 'the purpose of the main conspiracy ... by its very nature, called for concealment.'" *United States v. Mann,* 161 F.3d 840, 859 (5th Cir.1998) (quoting *United States v. Diez,* 515 F.2d 892, 897–98 (5th Cir.1975)). In *Mann,* the defendants were charged with, among other things, conspiracy to defraud the United States through various transactions involving financial institutions. *Mann,* 161 F.3d at 847–48. The court held that false tax filings by the defendants concerning these transactions were in furtherance of the main purpose of the conspiracy, and thus the statute of limitations was not violated, because the conspiracy "extended to concealing the fraudulent nature of the transaction, in order to evade taxes and maintain control of the [financial] institution in the face of continual regulatory oversight." *Mann,* 161 F.3d at 859. *See also Forman v. United States,* 361 U.S. 416, 423–24, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960), *overruled on other grounds by Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (holding that a conspiracy to evade taxes from 1942 to 1945 extended

until 1953, because concealment had to continue for the tax evasion to succeed).

The Second Circuit approached similar facts from a somewhat different perspective in *United States v. LaSpina*, 299 F.3d 165 (2d Cir.2002), where the defendant and his co-conspirators had arranged to receive illegal kickbacks, some of which had gone into purchasing real estate. *Id.* at 171–72. The conspirators sold the real estate several years later, and the defendant received a profit. *Id.* at 172. The government argued that the sale of the property was within the scope of the conspiracy because the conspiracy continued as long as any conspirator engaged in any monetary transaction involving criminally derived property. *Id.* at 174. The court rejected this definition of the conspiracy, noting that it would result "in an indeterminate extension of the statute of limitations" in violation of *Grunewald*. *Id.* The court did find that the sale of the property was within the scope of the conspiracy, however, because "[w]here the object of a conspiracy is economic, the conspiracy generally 'continues until the conspirators receive their anticipated economic benefits,'" which did not occur until the property was sold. *Id.* at 175 (quoting *United States v. Mennuti*, 679 F.2d 1032, 1035 (2d Cir.1982)). The *LaSpina* court did not determine "the outer limits of the conspiratorial agreement" in that case. *LaSpina*, 299 F.3d at 175.

■ In this case, the central question is whether Upton's filing of a false tax return in 2000 for fiscal year 1997, which failed to

disclose the stolen money, was in furtherance of the central crime or simply post-crime concealment. Although it is a close issue, I conclude that the failure to file was more similar to the former than the latter. Just as repainting a stolen car is in furtherance of the central crime of stealing the car, *Grunewald*, 353 U.S. at 405, 77 S.Ct. 963, failing to report stolen money to the IRS is in furtherance of the central crime of laundering the money.[2] The very purpose of the conspiracy in this case—hiding the stolen money—called out for concealment of the proceeds from the federal authorities.[3] The facts are analogous to those in *Mann*, in which the false tax filings were an inherent part of the overall scheme of fraud. It is true that under the standard suggested in *LaSpina*, the defendants' anticipated economic benefits from the laundered money were gained by May 1999, when the Iyanough Road property was sold. Nonetheless, the centrality of tax concealment to the money laundering conspiracy in this case necessitates a finding for the government.

### C. *Forfeiture*

Upton moves to vacate the jury's forfeiture findings. Where a defendant is convicted under 18 U.S.C. § 1956, a court "shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982. After Upton was convicted, the jury was asked to determine the extent of forfeitable property. The jury found

---

**2.** This case is particularly troublesome because Upton filed the tax return three years after the other transactions involved in the case, thus distancing the filing from the rest of the conspiracy. Had Upton filed the return on time, however, this case would be a more straightforward exercise of the "crime necessitates concealment" theory described in *Grunewald* and *Mann*.

**3.** The indictment also alleged that the defendants' failure to declare a capital gain for the sale of the Iyanough Road property in 1999, and Upton's failure to report rental income on the property for 1997, were in furtherance of the conspiracy. It is not clear, however, why concealment of this income would be in furtherance of the money laundering conspiracy.

that at least some property was forfeitable out of (1) the money paid to Upton and Alberico at the sale of the Iyanough Road property; (2) the money used by Upton to purchase cars at auction during a certain period; and (3) the money deposited into the bank accounts of Upton's company, Look Motors, during a certain period.

 Upton argues that the jury was incorrectly instructed to use a "preponderance of the evidence" standard rather than a "beyond a reasonable doubt" standard in deciding the forfeiture issue. He argues that under the Supreme Court's recent opinion in *Blakely v. Washington*, — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the reasonable doubt standard must be applied.

In *Blakely*, the Court held unconstitutional a state statute that authorized a trial judge to sentence a defendant above a statutory maximum if the judge found any of a number of aggravating factors, holding that the statute violated the defendant's Sixth Amendment right to trial by jury. *Id.* No court has extended *Blakely* to require a reasonable doubt standard in forfeiture hearings, and one circuit court has explicitly rejected such an extension.[4] *See United States v. Messino*, 382 F.3d 704, 713 (7th Cir.2004) ("[W]e conclude that *Blakely*, like *Apprendi*, does not apply to forfeiture proceedings.")[5] In addition, numerous courts have rejected a similar argument under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the case which provides the foundation for the *Blakely* decision. *See Blakely*, 124 S.Ct. at 2536. *See, e.g., United States v. Keene*, 341 F.3d 78, 85–86 (1st Cir.2003) (noting in the context of § 853 that "other circuits have consistently refused to apply *Apprendi* requirements to criminal forfeitures," and that "[t]he forfeiture is not viewed as a separate charge, but as an aspect of punishment imposed following conviction of a substantive offense") (internal quotation marks omitted); *United States v. Shryock*, 342 F.3d 948, 991 (9th Cir.2003)(rejecting challenge under *Apprendi* to use of preponderance standard for forfeiture finding); *United States v. Gasanova*, 332 F.3d 297, 300–01 (5th Cir.2003) (same); *United States v. Najjar*, 300 F.3d 466, 485–86 (4th Cir.2002) (same); *United States v. Vera*, 278 F.3d 672, 672–73 (7th Cir.2002) (same); *United States v. Cabeza*, 258 F.3d 1256, 1257–58 (11th Cir.2001) (same).

### D. *Sufficiency of the Evidence*

Lastly, Upton argues that the verdict on the charges of money laundering and failure to file a tax return for the year 1999, as well as on the forfeiture count, was based on insufficient evidence. The Court *DENIES* the motion for judgment of acquittal on these grounds. Because I do not have a transcript and the matter was not well briefed, I will rely on the trial record for my reasons.

---

**4.** It should be noted that in *United States v. Cianci*, 378 F.3d 71, 107 (1st Cir.2004), the First Circuit stated: "In light of the Supreme Court's recent decision in [Blakely], we do not decide ... challenges by defendants and the government to the district court's forfeiture order. By separate order, we have requested additional briefing and oral argument on these issues."

**5.** *Messino* and several other opinions mentioned below involved a drug-related forfeiture statute, 21 U.S.C. § 853, rather than 18 U.S.C. § 982, which is at issue here. The same reasoning that applies under § 853 as to the preponderance standard should apply in § 982 cases, however. *See, e.g., United States v. Hasson*, 333 F.3d 1264, 1277–79 (11th Cir. 2003) (comparing § 853 and § 982 and finding that the preponderance standard should apply for both); *United States v. Myers*, 21 F.3d 826, 829 (8th Cir.1994) (same).

## IV. ORDER

The Court **DENIES** defendant's motion for acquittal on the charges of conspiracy to commit money laundering and failure to file a tax return for tax year 1999, and **DENIES** his motion to vacate the jury's forfeiture findings.